whenever you're ready. Good morning, Your Honors. Ron Forbes for InterMetro. The board's decision in this case should be an obviousness, should be overturned and reversed because the board failed in the factual findings based on actual evidence and then based upon those factual findings articulate a reason as to why a person of ordinary skill and fact make the changes to the Dell reference of the board concluded that they would. In fact, the board's conclusions, factual findings in this case. Can I just clear up a little housekeeping thing and that is you're you're giving up your arguments related to the purported lack of jurisdiction to institute the IPR. In view of the click-to-call case we are for the purposes of this argument. What the board did here was make up reasons out of whole cloth as to why a person of ordinary skill in the art would make the changes to the Dell reference based upon swear that the board wanted to make. In fact, they ignored the only evidence in the record of a person of ordinary skill in the art which was the declaration of Dr. Erdman and finally the board erred in not giving sufficient evidentiary weight to evidence of secondary considerations that is commercial success because as a matter of law they failed to give the Dell's one of Dell's principles of operation is that it's only for general multi-purpose use as a cart. That's right. Where do you find support for that? In the background section of the Dell, your honor, it says the purpose of Dell is to transport a variety of diagnostic equipment. It says computers, laptops, and other diagnostic equipment. So the purpose of Dell is to be able to put whatever type of equipment that you want and for the court's reference I have on the demonstrative here the Dell reference next to the swear reference and in background it says it's not just for computers it's for computers, laptops, and other diagnostic equipment. That's it's near the bottom of the background section. Okay so you're and therefore what? Well and therefore to make all of the changes that's one of the reasons why a person of ordinary skill in the art would be pushed away from making these changes because it would transform the Dell cart into a dedicated computer cart. But if it's something's general purpose it can be used for lots of things, right? It can, your honor, but if the purpose in the market is to sell a cart that you can put a lot of different things on top and move it around, why would a person want to buy one that's dedicated to a computer use? That is to put a keyboard underneath, a monitor attached to it, and which would make it by definition far more expensive, all right? If it's a general-purpose computer for moving around different types of diagnostic equipment you wouldn't want all of the extra built-in permanently mounted keyboards, monitors, etc. That's the purpose of the argument. It pushes a person of ordinary skill away from making those changes. Okay but that while that is important to this argument it's not the primary focus. The primary focus is that the board failed to look at any evidence to support its findings as to why you would make these changes, okay? They made it about a whole clock. Well, well, is the PTAB not allowed to adopt arguments made in the petitioner's brief if it finds them compelling? Your honor, attorney argument is not evidence. They have to come up with a reason why a person of ordinary skill in the art would make these changes. Well, they say the stated reasons to combine the relied-upon prior art teachings ellipses are sufficient and the cited evidence supports the reasoning. And then they go on and don't cite any evidence, your honor. I can't find any evidence that they support that supports those findings. It's only attorney argument. If you look at the where's the evidence. The only evidence before the board in this case was the references themselves and the declaration of Dr. Erdman. The board declined to rely upon the declaration of Dr. Schlesinger, which is an expert because he's not a person of ordinary skill in the art. Under the Sundance case the board couldn't rely upon him. He may be an expert in nanotechnology but he's not an expert by his own admission as what a person of ordinary skill in the art is. To give opinions about mechanical systems he doesn't qualify. So the only evidence is these two references and Dr. Erdman's testimony. Okay, you can't find a motivation or a reason why a person of ordinary skill in the art would make these changes from these references. And Dr. Erdman says the contrary. He says you wouldn't make these changes. You wouldn't make the changes to Dell that the board wanted to do even though they didn't have any evidence to do it. There's five steps that the board had to go through to come up with the claimed invention. They started with Dell and the first thing they said is well let's move the bracket for holding a power supply from SWIR, which is 220, over to Dell and move the power supply out of compartment 100 into the new bracket that they just located on Dell. On Plannar prior on claim 108 your argument is that the combination of elements doesn't disclose a power unit directly underneath the vertical beam. That's right. Are you suggesting that the claim limit limitation requires the entire power unit to be directly underneath the vertical beam? We are not. We are contending that the claim... So you disagree with the PTAB's finding that at least part of it is found under the beam as shown in Plannar? We do. If you look at Plannar, it's a beige housing. The power supplies are the two batteries that are on the outside of the beam. They're not underneath the beam at all and the only evidence in the record of that is from a person of ordinary skill in the art is Dr. Erdman who says exactly what I just said. Okay, so back to this combination. After moving the power supply in Dell from its existing location to a new bracket that is installed at the base, then they move a computer into the vacated bracket 100 in Dell and then they add a keyboard and then they add a monitor. Now the question is why? Why does a person of ordinary skill in the art do all of these changes? That's the question and that's where the evidence is lacking, right? Because remember, what did the board say the reasons would be? The board said, well, the first reason you would move a bracket from SWEAR... Can you tell us what where you're reading from in the board's opinion? I can actually. Appendix 0018 is the board's opinion as to the reasons why they make these changes spans between 0018 and 0019 and I'm just getting... Remember there's two appeals here but I'm just giving you they're essentially identical opinions. I'm giving you the appendix from one of the opinions. First reason is, well, if you move the bracket from SWEAR over to Dell on the base and then you move the power supply from its home in Dell already to this new bracket, you would make room to put a computer there. Okay, but why? That's pure hindsight. The only reason you would want to make room to put a computer there is if you looked at the claims of the, you know, the claims at issue and said, well, I need to get a computer there. Let's make a space for it. Neither Dell nor SWEAR shows a computer underneath of the work surface in that spot. So why does a person of ordinary skill in the art do that? There's no reason. There's no evidence. There's nothing. The only thing in the wouldn't do that because you get no extra benefit from putting that bracket from SWEAR on the base of Dell. The board ignored that and substituted their own opinion for that of a person of ordinary skill in the art, that is Dr. Erdner. Now, if you can't start... That's the linchpin of the argument because if you don't move the power supply from where it's located in Dell to a new location on the base, the rest of the argument falls apart. Okay, but let's look at the, you know, some of the reasons. They said, well, if you move the power supply to the new location on Dell, you can, quote, power could be provided to the computing device. Power can already be provided to the computing device in Dell as it stands. That's the whole purpose of a power supply. There's no reason to move it to supply power to the computer. The next reason they gave, a power cord could be easily and safely run along the floor to a power outlet for recharging the battery supply. Where does that come from? That's made up out of whole cloth, but it's not even supported by the facts of this case. Because in Dell, at appendix 670, column 3, lines 36 to 40, Dell actually says that the power cord as it exists is run through the bottom of the case at number 116. It goes right to the floor already. So why move the power supply for that reason? It doesn't make sense. And finally, the final reason is, that the board gives, which they copied from N of H brief, is, well, if you have the battery low on the cart, it provides a better stability, lower center of gravity. Well, where does that come from? Okay, number one, there's no evidence anywhere that stability in Dell was going to be a problem anyways. Second, if you look at where the power supply is already in Dell, as compared to where the bracket from SWEAR would be, if you put it over the base of Dell and move it, they're essentially at the same height already. There's very little difference. I mean, inches, maybe. So why would a person of ordinary skill in the art go through the effort to modify Dell when the benefits are already there? In fact, if you wanted the power supply lower in Dell, Dell moves up and down. If you want a lower center of gravity when you're going to move it, you would lower the whole system so the battery was as low as possible on the system. There's no reason the board didn't find, didn't, you know, they copied N of H's arguments, ignored Erdman's testimony, and didn't cite any evidence that actually supported their reasons for making these conclusions. That's the problem. And if you follow an invasive decision, that is a major problem for the board. Okay, that is not allowed. At best, they relied upon common sense with no further. The board failed to give any real weight to the evidence of secondary considerations, primarily commercial success. If you look at the commercial success in this case, it's staggering. They had a reason for not placing extraordinary weight on it, which is that included the licenses were for multiple patents and therefore there was no nexus established. That was one reason, Your Honor. They said there's no nexus established. Okay, and the first response to that is they should have presumed, there's a presumption of nexus where it's established that the patents cover a product, which we established here. Okay, there's a nexus that's presumed. They didn't give us that presumption. Second of all, there are multiple patents that cover these patents. They claim the entire system as a configuration, as an assembly. This is not a situation where you have one product covered by, say, multiple patents that each patent addresses a different aspect of the product, like a cell phone or whatever. All of the patents that cover these products are from the exact same family, stemming from the same specification, and so under those Well, Your Honor, we couldn't find a case to support that, but we couldn't find a case to not support it as well. The only cases relied upon by Innovate for that point are ones where there are patents, different patents, that cover the same product from different families. They're not related patents. Okay, but if they're related patents and they cover a system, we believe the presumption should apply. You're into your rebuttal, so why don't we save the remainder and I'll hear from the other side. Thank you. We're going to run the clock at 11, just at this divided time here between two of you. Yes, Your Honor, in view of Mr. Forbus' comment that he was not going to argue the real party and interest issue. Then we're just hearing from you. Okay, so let's hear from me unless someone on the panel has questions about that issue. Your Honor, this is not a case of first impression. This is an appeal where the only issue is did the board have substantial evidence to support its findings. What's the evidence on motivation? The evidence on motivation is simple. First of all, it's in Dr. Schlesinger's declaration. Dr. Schlesinger's declaration was not stricken by the board. They just determined that they did not need to rely on it and denied the motion to strike it as moot. It is in the record. Dr. Schlesinger has a PhD in physics. He's head of the Department of Engineering. Wait a minute, but we're here talking about the board's opinion, so why don't we talk about what the board relied on. What the board relied on was the combination of Dell and SWER. The motivation lies in the fact that the patents in Dell show a desktop PC computer system. The Dell patent shows a laptop. If one wants to use a PC instead of a laptop, one has to make some changes in the structure in order to accommodate to accommodate all of the peripherals that go in a PC system. So all that one needs to do in making the system available for a PC is to make a few minor changes, and that would involve simply, if I may use Mr. Corbis's diagram, taking this bracket on the bottom and moving it over to the chassis on the Dell system, and then taking the, what is shown in dotted lines, it's not part of the invention, an interruptible power supply which is in this compartment, and moving it down to that bracket. That's all one needs to do in order to make the system compatible. Yes, if you use a PC instead of a laptop, you then need to have a keyboard because a laptop doesn't have one. So the Allen patent adds that you can just have a removable keyboard that slides under, and you have a keyboard. So now you have the same system, you have this compartment that moves up and down, that's part of the Dell system, and it's empty because you've moved the power supply to the bracket on the bottom. Here's a concern I have. You argue that we can rely on your expert testimony. Yes, Your Honor. But even if the evidence was uncontroverted, how can we rely on it when we have ample case law saying that the conclusions on the review, on the PTAB's analysis? Surely you agree that for an obviousness review, we don't find fact in the first instance? Of course. I agree with you, Your Honor. So where is it? Because the argument that was made by Dr. Schlesinger in his declaration were in fact the same arguments presented by the board in its opinion, they just didn't cite Dr. Schlesinger in order to avoid the motion that the patent... So show us what you're referring to in terms of what the board said. About Dr. Schlesinger? Yeah. Well, you're saying they essentially relied on what he said without crediting... The argument that they relied upon was the argument stated by... Appendix 47 in one of the opinions. And that section, which is a description of taking Dell and Swear and combining them, in fact tracks what Dr. Schlesinger said in his declaration, and of course it also appears in the IPR petition because our petition was based on the declaration. So what they said is, yes, they quoted our petition as saying it, but the information came from Dr. Schlesinger. The motivation was simply to take a system designed for a laptop and make it available for use as a personal computer system. It didn't change the structure to any significant extent except by moving the bracket over. It wasn't just common sense as the petitioner claims here. The information was supported, there was a rationale, it was laid out in detail. It was not controverted by any evidence. In fact, InterMetro relies upon the testimony of Dr. Erdman, which the board itself found not to be credible in at least one instance. So that evidence is not the only evidence of a record. Counsel argued that the conversion that was proposed would make Dell limited in some way or another, but the Dell patent specifically said it's for use in a medical environment. It doesn't limit it in any way. Moreover, the patents ensued are used primarily for a medical environment, but there's nothing in the claims of the patents ensued which require any medical environment. It just talks about a mobile cart, and all of these are mobile carts. On the question of commercial success, Your Honor asked where the nexus is. This is a case where the patent owner filed a whole series of applications. They have about seven patents with overlapping claims. They're all very, very similar. They have hundreds of claims. In fact, in one re-exam, they put in well over 100 additional claims, claiming all of the elements here in various combinations. They have A, B, C, and D in one claim, A, B, C, and E in one claim, A, B, C, D, and E in another claim. They all overlap each other. It's a situation where what they've done is they aggregated a bunch of features that were already in prior art devices and combined them to make a mobile cart. There was no evidence, in addition to the lack of nexus, there was no evidence to support their declaration which purported to put in commercial success evidence. The affiant was an officer of InterMetro, but he could not possibly have any idea of the sales of all the competitors or the size of the market because he cited nothing. He had no reports from anyone. He had no information at all. He just made an estimate, and he said the market is very large, and everything is covered by our patents. In their brief, InterMetro claims that their claims are not limited in any way. They're just broad, and they include all of these elements, but there's nothing in the claims which said that all these elements can't be removably used in the system and taken out and swapped whenever it is necessary. They are not in there by any permanent method. The bottom line here, Your Honors, is that Dell, hence where, disclosed all of the elements of the patented claims. Dell has a desktop surface which can be used to write on. There's nothing in the claims about how much surface needs to be written on. It has a display screen that sticks up. It has a place where you could put a computer. It has a place where you could put a power supply. It has a chassis. It has a desktop surface which could be lowered or raised to fit the user's height. The only things that it lacks are the components necessary to run a desktop system rather than a laptop system, and those can be supplied by SWIR, which shows a bracket down on the chassis and the base, which is just screwed on there. That could be put on the same almost exact base on Dell and the computer console put into that space. What about the planar discussion I had with your opposing counsel? Yes, Your Honor. The planar patent shows a housing that circumscribes the entire pole near the base, and in that housing, which is the power supply, there are some batteries that can be moved in or out. That is at the lower end. It doesn't have to be exactly underneath it. It surrounds the whole base, and we believe that the pole actually goes into that housing. Dr. Erdman testified about that. He said that it wouldn't work that way, and that's where the board said his testimony was not credible. The use of a power supply down at the lower end would have been obvious. Their own inventor, Mr. Flemick, testified, and this is in the record. Mr. Flemick said, where would you put the battery, which is the power supply, and he said, this is Mechanical Engineering 101. It would have to be in the base because it's probably a lead-acid battery, and it's heavy. It's like a car battery, right? So it would be in the base. So there was nothing non-obvious about putting this heavy battery down at the bottom. It would still serve as its counterbalancing function. It would still be out of the way, and it would disclose the elements of Claim 108. Any further questions? Thank you. Thank you, Your Honor. Your Honor, the key question in this case is, where is the evidence on the issue of why a person of ordinary skill and the art would have made these changes? And when asked, when Your Honor's asked my opposing counsel where that evidence was, he pointed to Dr. Schlesinger, and that was it. There's been a lot of discussion about what you could do, what you might do, what was available, but the question is, where's the evidence of why? And he pointed to Dr. Schlesinger, and that was it. Dr. Schlesinger was not relied upon by the board, and for good reason. Dr. Schlesinger is a physics professor. He's an expert in nanotechnology and optical devices, but by his own admission, he doesn't meet the test of a person of ordinary skill and the art. And therefore, under the Sundance case and many others, he's not qualified to testify, and that's why the board didn't rely upon him. And even if the board did rely upon Dr. Schlesinger, if you read his declaration carefully, he doesn't say why a person of ordinary skill and the art would do these things. He says, just like opposing counsel did, they could have done these things, they might have done these things, but he doesn't give reasons why they would have. And as we went through before, the reasons that the board adopted on a whole cloth from opposing counsel's brief, they don't make sense. Last point I want to make on the issue of secondary considerations. This is an invention that has had tremendous commercial success. Every major competitor of InterMetro has licensed this patent family, except for Innovate. In any given year, between our client, InterMetro, and all the licensees, they sell about $150 million worth of these products. That's tremendous commercial success, and it goes to the issue of obviousness. Thank you. Thank you. We thank both sides for the cases submitted.